DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 5:05 CR 0492 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| Michael Honnold, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

**I.  Introduction**

The defendant entered a plea of guilty to the three counts in the indictment on November 30, 2005.  No plea agreement accompanied the pleas of guilt.

The Court ordered a pre-sentence report and has received the same.  The Court finds that the total offense level, which includes a two-level adjustment for acceptance of responsibility, is 37 and the defendant's criminal history is I, calling for an advisory sentencing guideline range of 210 months to 262 months.  The statutory maximum for the three convictions is 45 years and the statutory minimum sentence as directed by the Congress is five years or sixty months.

In the post-*Booker* setting, the Court is required to consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to determine whether to impose a sentence within the advisory guidelines or engage in a variation, either upward or downward.  After a consideration of the pre-sentence report, the Section 3553(a) factors, including the unusual extensive documentation accompanying the pre-sentence report, as well as the advisory sentencing range, the Court has

(5:05 CR 0492)

determined that the presumption of reasonableness afforded the properly calculated Guidelines sentence has been rebutted[1] and that a substantial variation is reasonable in this case.

The Court will reduce the total offense level by 12 levels, from 37 to 25, which calls for a sentencing range of 57 to 71 months with the statutory requirement that the sentence imposed be at least 60 months.  The Court's analysis, including a consideration of the Section 3553 factors, follows.

### II.  The Nature and Circumstances of the Offense  (Section 3553(a)(1))

As summarized in the presentence report at paragraphs 2-4, the three counts in the indictment returned on October 12, 2005, charged:

#### Count 1

On or about January 20, 2001, through April 29, 2003, the defendant did knowingly receive and distribute, in interstate and foreign commerce, by computer, numerous computer images and video files, which contained visual depictions of real minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).  All in violation of 18 U.S.C. § 2252(a)(2).

#### Count 2

From about April 30, 2003 through March 28, 2005, the defendant did knowingly receive and distribute child pornography, as defined in 18 U.S.C. § 2256(8), that had been shipped and transported in interstate and foreign commerce, by computer.  All in violation of 18 U.S.C. § 2252(a)(2).

---

[1] In a published decision, the Sixth Circuit recently joined other circuits in "crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness[,]" concluding that such a presumption "comports with the Supreme Court's remedial decision in *Booker*."  *United States v. Williams*, No. 05-5416, 2006 WL 224067, at *1 (Jan. 31, 2006).

(5:05 CR 0492)

### Count 3

> On or about March 30, 2005, the defendant did knowingly possess a computer and computer disks that contained child pornography, as defined in 18 U.S.C. § 2256(8), which child pornography had been shipped and transported in interstate and foreign commerce by any means including by computer, and which was produced using materials which had been so shipped and transported, by any means including by computer. All in violation of 18 U.S.C. § 2252(a)(5)(B).

The October 2005 indictment followed the execution of a search warrant at the defendant's residence on March 30, 2005. The defendant was out of town at the time of the search, but on his return he surrendered his computer to the FBI. As a result of the search, more than 1000 images of minors engaged in sexually explicit conduct, including such conduct by prepubescent minors under the age of 12, were revealed. The defendant was interviewed by the FBI on April 15, 2005 and admitted that he was involved in trading images depicting child pornography through the use of Yahoo internet groups and chat rooms.[2]

A more complete description of the offense conduct, as submitted to the Court's probation department by the FBI case agent, James Harmon, is set forth in paragraphs 8-20 of the presentence report and attached as Appendix 1.

The defendant was employed as the band director at Glen Oak High School at the time of the search. He submitted his resignation as the band director effective April 8, 2005, and prior to his indictment. He also surrendered his teaching certificate.

---

[2]A more complete description of the offense conduct is set forth in the revised presentence report. See Appendix 1.

(5:05 CR 0492)

The Court notes that there is no evidence, direct or indirect, that the defendant ever engaged in the photography of any minors engaged in sexual conduct.  There is also no evidence that the defendant ever used any of the images to engage in sexual conduct or that the defendant ever engaged in direct or indirect pedophile conduct.   Rather the evidence demonstrates that the defendant was a collector of such images.

### III.   The History and Characteristics of the Defendant  (Section 3553 (a)(1))

The defendant was born in 1972 and is now age 34.  He is the younger of two sons born to the marriage of his parents who now provide a home for the defendant, who is free on bond while he awaits sentencing.

The defendant graduated from Glen Oak High School in 1990.  Glen Oak is a very large high school in Stark County and is located just north of the City of Canton. (In the Court's earlier career as the Prosecuting Attorney for Stark County, he served as legal counsel to the Board of Education for the school district in which Glen Oak is located.)  The defendant then attended Bowling Green State University and graduated in 1994 with a Bachelor of Music Degree.

Defendant's career as a band director began in 1995 when he worked as the Director of Bands/Music Director at St. Joseph's Central High School in Fremont, Ohio.

From 1998 to 2000, the defendant attended the University of Toledo where he studied music and worked toward graduation with a Master of Music.  The defendant contends that upon completion of his thesis, he will graduate with a Master's Degree, but the completion of his

4

(5:05 CR 0492)

thesis has been interrupted by the confiscation of his computer. While the defendant attended the University of Toledo, he also worked as the Assistant Director of Bands at the University.

Beginning in the year 2000, the defendant worked as the Director of Bands at the Napoleon Area Schools in Napoleon, Ohio.

The defendant left his Napoleon employment in 2003 to return to his high school alma mater, Glen Oak High School, as the Band Director. He remained in that position until April 8, 2005, when he resigned due to his present difficulties in this case.

The defendant was married on July 11, 1998 and a son, Jaegar Honnold, age 2, was born to the marriage which is in the process of divorce/dissolution.

The defendant has no criminal record. Although the defendant has been engaged with bands for approximately ten years, there is absolutely nothing that has emerged in this case to suggest that the defendant has acted in an improper manner with any of the vast number of students with whom he came in contact during that period of time. To the contrary, numerous letters from former students indicate that his teaching conduct was exemplary.[3]

Former neighbors have written letters indicating that the defendant did not engage in any improper conduct and was well-considered by the neighbors.[4]

The defendant concedes that he developed an addictionfor pornography, first adult and then of minors, and that his addiction was a factor in his now-failed marriage. The defendant

---

[3] A sampling of such letters is attached as Appendix 2.

[4] A sampling of such letters is attached as Appendix 3.

5

(5:05 CR 0492)

was interviewed by the Probation Department on January 11, 2006 and he provided a written statement which traced the development of his addiction. The statement in its entirety follows:

> From a young age I had access to pornography. My parents had a suitcase locked away with pornography in it. My brother and I found the key and I would frequently get it unbeknownst to my parents. This coupled with my curiosity about girls was the impetus for my porn addiction. In college I continued to purchase porn but it wasn't until the internet that I really developed an insatiable appetite for it. It was so easy to get. Instant messenger perpetuated it. I found others who loved porn and would steer me towards various sites. I would look up any type of porn I could think of. I found myself wanting more original/amateur and unique pics and videos. It wasn't till someone sent me a child pornography picture that I gained a curiosity for it. It spiraled out of hand as I found it so easy to obtain. I tried numerous times to delete all porn and not look but I always went back. I spent hours upon hours looking and talking online and had even skipped classes or gone in late to work because of it. I couldn't stop. My relationship with my wife didn't help. We were intimate only once since the birth of our child and seldom were there intimate (sic) before that. She would ignore me any time I went into the computer room and we seldom talked. It gave me more opportunity especially at night to look at porn.

Many documents have been provided to the Court which speak to the high regard in which the defendant is held by the community and his employers.[5]

### IV. The Need For the Sentence Imposed

**A.  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

Trading in child pornography is a very serious offense. The victims are the children themselves who are photographed engaged in conduct that will probably cause them life-long harm and may make still more victims of their eventual offspring. Even though the offending

---

[5]A sample of the community support for the defendant is attached as Appendix 4.

6

(5:05 CR 0492)

materials are easily available on the internet to persons with sufficient intelligence to put the internet to that use, it is essential that those who view and collect the images be punished and a severe punishment is necessary in the hope that such severe punishment, if well-published by the media, will curtail the use of the internet for that purpose and will eventually reduce the number of child-victims of such action. Thus, as recognized by even the friends of the defendant and as required by the mandatory minimum sentence enacted by Congress, his conduct requires penal sanctions.

In the Court's view, after taking all the facts into consideration in this case, including the advisory sentencing guidelines, the Court is of the view that a sentence of 60 months imprisonment is just punishment for the defendant's crimes.

**B.     To afford adequate deterrence to criminal conduct**

The defendant's arrest and the accompanying publicity has attracted widespread interest in this case. The defendant is well-known and a sentence of 60 months will be deemed harsh by many of the defendant's friends, associates, and former students. The sentence of 60 months will afford, in the Court's view, more than adequate deterrence to criminal conduct of the type that the defendant committed.[6]

---

[6]See Appendix 5, which is a copy of the report of the defendant's sentence as published in the *Canton Repository* on February 22, 2006.

(5:05 CR 0492)

## C. To protect the public from further crimes of the defendant

On April 7, 2005, the defendant began consulting with a practicing psychologist, Robert K. Devies, PhD. On October 17, 2005 he provided an assessment of the defendant to his counsel. His report follows:

> I have been seeing Mr. Honnold at our Belden Village office since April 7, 2005. He was initially seen following the discovery of problems with regard to an interest in childhood pornography. Over the course of our time together, he has consistently impressed me as being both serious in his intentions to recover from the addictive qualities of his behavioral difficulties, as well as being significantly remorseful with regard to his involvement in this situation.
>
> Based on our work together, which has been significant, I am of the opinion that he is extremely amenable to intervention, is not a pedophile in the practicing sense, and would represent little or no risk to the community from a recidivism standpoint. Clearly, there continues to be more work to be done in his case, however, a good start has certainly been fashioned over the last six months.
>
> I am hopeful that some type of community based program will be accessible to him in order that we might continue this work. I might add, that as a result of this situation, Mr. Honnold has experienced considerable loss. His professional career has been exchanged for a cook in a nursing home. His relationship with family has been strained and his otherwise positive reputation has been tarnished. The potential for improvement of his status would not be served to any significant extent by incarceration.
>
> I hope this proves helpful in our advocacy of this most deserving young man, please feel free to contact me should you have any further questions.

After reviewing the report of Mr. Devies and the numerous letters submitted to the Court, after viewing the defendant in the courtroom during his arraignment and while taking his guilty pleas, the Court is of the belief that the embarrassment of the public disclosure, the failure of his marriage, the loss of his employment will alone protect the public from further crimes of the

8

(5:05 CR 0492)

defendant. The addition of a sentence of 60 months will certainly protect the public from further crimes and the Court so finds.

**D.    To provide the defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner**

It is possible that the defendant needs additional psychological treatment and that will be a decision for the correctional officials. However, the defendant does not need additional educational or vocational training. To the contrary, his musical skills will probably be a considerable asset for the correctional powers to employ.

### V.    Conclusion

The Court finds that the defendant is a well-educated man, dedicated to music and teaching, but crippled by his addiction to pornography which eventually led him, with easy access to the internet, to shift from adult pornography (now an ever-present feature of our culture) to the darker side of pornography that features minors.

After considering the advisory guidelines and the sentencing factors of 18 U.S.C. § 3553(a), the Court finds that the downward variation of 12 levels is reasonable and sentences accordingly.

IT IS SO ORDERED.

  February 23, 2006                             *s/ David D. Dowd, Jr.*
Date                                            David D. Dowd, Jr.
                                                U.S. District Judge